UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TAMMY LUDWIG,

    Plaintiff,

    v.

ST JOSEPH COUNTY, et al.,

    Defendants.

Case No. 3:24-CV-800-CCB

## <u>OPINION AND ORDER</u>

Plaintiff Tammy Ludwig sued Defendants St. Joseph County and St. Joseph County Public Safety Communications Consortium under the Age Discrimination Employment Act, 29 U.S.C. § 621 *et. seq.* (ADEA).[1] The Court now rules on Defendants' motion for summary judgment. (ECF 19).

### BACKGROUND

The following facts are undisputed unless otherwise noted.[2] This case arises from Plaintiff Tammy Ludwig's termination from her employment with Defendant St. Joseph County Public Safety Communications Consortium ("Consortium"). Ms. Ludwig was first hired by St. Joseph County as a police dispatcher in January 2005 and was then transferred to an emergency dispatcher position within the Consortium. (ECF 21 ¶ 1–2).

---

[1] Plaintiff also alleged gender discrimination under Title VII, 42 U.S.C. § 2000e *et seq.* However, in her Response brief, she has withdrawn that claim. (ECF 30 at 16). Thus, summary judgment is automatically granted on it. *See Williams v. Lovchik*, 830 F. Supp. 2d 604, 614 (S.D. Ind. 2011).

[2] To dispute a fact, the party opposing summary judgment must identify the fact as disputed and cite to evidence which raises a genuine dispute. N.D. Ind. L. R. 56-1(b)(2)(C); Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, a fact is undisputed if the party either noted it as such, or cited no evidence which raised a genuine dispute.

A Collective Bargaining Agreement ("CBA") outlined Ms. Ludwig's employment terms and conditions. (ECF 21 ¶ 5). The CBA provided for the employment discipline process, outlining three offense categories: Group I, Group II, and Group III. (ECF 21 ¶ 10).

A Group I offense is defined as "tardiness or failure to report for duty within a reasonable amount of time." A Group II offense includes excessive absenteeism or failure to report for a mandated on-call shift. (ECF 31 ¶¶ 11, 13). Group III offenses include "dishonesty or any dishonest action" and "insubordination by refusing to perform assigned work or to comply with written or verbal instruction of supervisors." (ECF 31 ¶ 15). While specific progressive disciplinary steps are required for Group I and II offenses, (e.g., verbal warning, written warning, written reprimand, suspension, etc.), "the employer reserves the right to terminate an employee for [a Group III] offense without proceeding through progressive discipline." (ECF 31 ¶¶ 8–15). This case revolves around two Group III offenses that are the alleged grounds for Ms. Ludwig's termination.

### 1.    First Discipline Event

On June 15, 2023, Deputy Director Nicole Ingle sent an email to all dispatchers at the Consortium, informing them that their on-call days had been assigned. (ECF 31 ¶ 28). In the email, she instructed each dispatcher to check their assigned dates and contact her with any questions. (*Id.*). Plaintiff had previously been granted vacation time during her listed on-call shift on August 5, 2023. (ECF 31 ¶ 32). However, she did not contact Ingle to inquire about this conflict until July 31. (ECF 31 ¶ 31).

On July 31, 2023, Plaintiff emailed Ingle asking why she was listed as on-call for August 5 when she was on vacation time during that period. (ECF 31 ¶ 32). Ingle immediately responded and informed Plaintiff that she should have communicated this conflict earlier. (ECF 31 ¶ 33). Ingle also notified Plaintiff that she needed to find a replacement for the August 5 shift. (ECF 31 ¶ 34).

Plaintiff did not attempt to find a replacement. (ECF 31 ¶ 37). When she was contacted on August 4 and told she would need to work the next day, she stated that she was unable to do so, as she was on vacation time. (ECF 31 ¶ 39). Plaintiff did not attend the on-call shift on August 5, 2023, and her shift was covered by another employee. (ECF 31 at 15–16).

After this, Ingle prepared a Group II Notice of Unsatisfactory Performance offense designation. (ECF 31 at 17). However, after Deputy Director Nick Brovold became aware of Plaintiff's actions, he prepared a Group III insubordination charge. (ECF 31 ¶ 43). Plaintiff was given a pre-disciplinary hearing per the Group III procedures on August 7, 2023. (ECF 31 ¶ 44).

After the hearing, Brovold concluded that Plaintiff had engaged in insubordination. (ECF 19-24 at 3). However, he testified that Plaintiff would receive only a written reprimand because this was her first Group III offense ("first Group III offense"). (*Id.*).

The parties dispute whether the CBA's terms required Plaintiff to notify Defendants of her vacation time conflict when the schedule was originally sent out on June 15, and also dispute whether Plaintiff was required to work or find a shift

3

replacement for the on-call shift on August 5, 2023 when she had previously been scheduled for vacation time. (ECF 20 at 11; 30 at 8).

### 2.    Second Discipline Event

On November 12, 2023, Plaintiff received a jury duty notice for December 12, 2023. (ECF 31 ¶ 64). Plaintiff notified a supervisor, who edited the shift schedule on November 12, 2023. Later, her jury duty was cancelled. (ECF 31 ¶ 65). Plaintiff informed her supervisor of the cancellation. (ECF 31 ¶ 66).

However, at some time before December 12, 2023, Plaintiff realized that she was not listed on any of the shifts for that day, even after she had reported her jury duty cancellation. (ECF 31 ¶ 67). In fact, an employee had mistakenly modified the schedule by performing a "hard delete" that completely removed Plaintiff from the shifts for that day, rather than marking her as excused for a specific shift. (ECF 31 ¶ 67). This errant change was not reflected in the "master list" that only Plaintiff's supervisors had access to. On that list, Plaintiff was still scheduled to work on December 12, 2023. Defendants allege that Plaintiff was dishonest in not reaching out regarding her scheduling and must have known that there was an error when she saw that she had been completely removed from the schedule for that day. (ECF 31 ¶ 67). Due to their alleged dishonesty finding, Defendants determined that Plaintiff had committed another Group III offense and terminated her ("second Group III Offense"). (ECF 31 ¶ 91).[3]

---

[3] The parties also debate the number and nature of additional Group I and II offenses that Plaintiff received. But neither party argues that these offenses were the basis for Plaintiffs' termination. Thus, the Court does not address them here. *See Specht v. Google Inc.*, 758 F. Supp. 2d 570, 577 (N.D. Ill. 2010) ("The Court should not consider disputes over irrelevant or unnecessary facts.").

Plaintiff denies this inference, alleging that she had no access to the master schedule and had never previously been excused for jury duty and thus had no sense of what proper procedures were. (ECF 31 at 26). She also alleges that she was deterred from asking follow-up questions by Defendants' hostile response to her previous schedule clarification query on July 31. (ECF 31 at 33).

### STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S at 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## ANALYSIS

The only disputed claim in this case is Ms. Ludwig's ADEA claim. With ADEA claims, the standards for Title VII guide the court's analysis. *See Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 670 (N.D. Ill. 2016) ("ADEA claims are analyzed under the same framework as Title VII claims." (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009))).[4] Thus, the Court will use the analysis appropriate for Title VII discrimination claims.

---

[4] The analysis may differ slightly when "mixed motives" are at issue. A plurality of the Supreme Court has held that in the context of Title VII claims, when a plaintiff alleges that a protected trait was one "motivating factor" in a discriminatory act, the burden shifts to the defendant to "show that it would have made the same decision in the absence of the unlawful motive." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 229 (1989) (plurality opinion). But in *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 172 (2009), the Court clarified that this is not applicable to the ADEA context. Rather, the burden at all times lies with the plaintiff to "prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 177–78. Nevertheless, that difference is not relevant to this case, where no party has made a "mixed motives" burden-shifting argument.

6

In order to avoid summary judgment on a Title VII discrimination claim, a plaintiff must show evidence that would "permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In deciding this question, "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Id.* Courts may use certain evidentiary tests, such as *McDonnell Douglas*'s burden-shifting approach, to evaluate whether evidence meets this threshold. *See Napier v. Orchard Sch. Found.*, 137 F.4th 884, 891 (7th Cir.) ("*McDonnell Douglas* . . . remains an efficient way to organize, present, and assess evidence in discrimination cases." (internal quotations omitted) (quoting *Reives v. Ill. State Police*, 29 F.4th 887, 892 (7th Cir. 2022))). The court's use of a specific evaluation method will depend on how the parties frame their arguments. *Napier*, 137 at 891–92 ("We do caution that *McDonnell Douglas* may have limited value as a heuristic when a plaintiff has not taken that approach to presenting his case."). Yet regardless of what analysis a court uses, "the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014)

Here, the Court finds it is helpful to use the *McDonell Douglas* approach because the parties have framed their analysis in those terms. (ECF 20 at 5; ECF 30 at 14). *See Napier* at 892. Under *McDonell Douglas*, the plaintiff has an initial burden of production to show evidence that indicates a prima facie case for discrimination. *See Simpson v.*

*Beaver Dam Cmty. Hosp., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015). If the plaintiff meets this burden, the defendant must provide evidence of a nondiscriminatory reason for the action. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). The burden then flips back to the plaintiff, who must show that this reason was pretextual. *See id.*

In order to show a prima facie case for discrimination under *McDonnell Douglas*, a plaintiff must produce evidence that: (1) she was a member of a protected class, (2), she was meeting defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) a similarly situated employee outside the protected class was treated more favorably. *See Igasaki*, 988 F.3d at 958 (citing *McDonnell Douglas*, 411 U.S. 792). At the prima facie stage, a plaintiff's prima facie burden is "not onerous"—it is one of production, not persuasion. *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). *See also Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) (noting that on summary judgment, "the plaintiff must first meet his burden of production on the familiar four-part test for establishing a prima facie case"); *Fisher v. Transco Services-Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992) ("While we view the facts in the light most favorable to the nonmoving party, there is an affirmative burden of production on the nonmoving party to defeat a proper summary judgment motion.").

Here, the parties debate elements (2) and (4) of the *McDonnell Douglas* prima facie case: whether Plaintiff was meeting Defendants' legitimate expectations, and whether a similarly situated employee was treated more favorably.

8

### 1. Similarly Situated

To make a prima facie case under *McDonnell Douglas*, a plaintiff must show that there were other similarly situated individuals without her protected trait (in this case, age) who were not discriminated against. *See Igasaki*, 988 F.3d at 958.

For evidence of similarly situated individuals, Plaintiff cites to the affidavit of Ms. Renee Putnam, who served as the steward and secretary/treasurer for the union that represents employees of the Consortium. (ECF 29-11). In her affidavit, Ms. Putnam lists the disciplinary and employment histories for a number of individuals who worked at the Consortium. (*Id.* at 9–11).

First, there are serious evidentiary problems with this affidavit. Ms. Putnam's affidavit does not properly show that her description of each employment record is "within her personal knowledge" as required by Rule 56(c)(4) of the Federal Rules of Civil Procedure. The affidavit contains an initial boilerplate statement that "the content of this affidavit is based on my personal knowledge." (ECF 29-11 at 1). But when presenting the employment history details, Ms. Putnam states that "the following . . . is information that I have obtained and have access to in my role as Union Steward." (ECF 29-11 ¶ 46). This apparent reference to documentary information does not appear to be consistent with Rule 56(c)(4), which requires "actual observation of events or other direct means of establishing facts in a person's mind." *Nottmeyer v. Precision All. Grp., LLC*, No. 04 CV 0901 MJR, 2006 WL 516729, at *2 (S.D. Ill. Mar. 1, 2006). For similar reasons, Ms. Putnam's references to documents not in evidence would be inconsistent with Rule of Evidence 802 against hearsay, as these records are being offered for their

truth. *See Folkerts v. Seterus, Inc.*, No. 17 C 4171, 2019 WL 1227790, at *10 (N.D. Ill. Mar. 15, 2019) ("there is no hearsay exception for testimony about records not in evidence" (quoting *United States v. Florez*, 516 F. App'x 790, 794 (11th Cir. 2013))).

And even if Ms. Putnam's list was admissible, it cannot get Plaintiff past the "similarly situated" prong of *McDonnell Douglas*. Only two employees on the list (Cheyenne Whiting and Teshylia Peters) are younger than Plaintiff and thus even begin to qualify as similarly situated individuals without the protected trait. (ECF 29-11 at 9, 11). *See Igasaki*, 988 F.3d at 958.

But Whiting and Peters' disciplinary history is different from Plaintiff's. Neither had disciplinary events similar to the ones that led to Plaintiff's Group III violations.[5] For example, nothing suggests that either employee failed to show for pre-scheduled on-call shifts or find shift replacements when specifically asked. Nor are there records suggesting that they failed to follow up on known scheduling ambiguities or errors.[6]

According to Ms. Putnam's testimony, Whiting's sole employment errors involved calling off for unpaid sick leave and improperly marking herself as "unavailable" on certain specific dates. (ECF 29-11 at 9). And the testimony does not show that Peters committed *any* violations. According to Ms. Putnam's affidavit, Peters

---

[5] Defendants rely in part on the fact that no other employee received a Group III offense. This overlooks the key inquiry—whether or not the actual *acts* forming grounds for the offense were similar. An abstract categorization like "Group III" might be applied discriminatorily. *See McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) ("We have warned that an employer cannot be permitted to use a technically neutral classification as a proxy to evade the prohibition of intentional discrimination."). Thus, the fact that no other employees had a Group III offense does not end the inquiry.

[6] Plaintiff argues that whether these actions truly constitute "errors" depends on disputed inferences and interpretations regarding Plaintiff's employment terms and behavior. But as discussed below, a dispute regarding an employer's business judgment is not by itself sufficient to create a genuine dispute of material fact for purposes of a discrimination claim. *See infra* page 7–8.

10

has properly allocated her sick-day usage and received no write up.[7] (ECF 29-11 at 11).

Thus, Ms. Putnam can only point to one similarly situated employee who breached

policy in any way. And even then, she does not show that the policy breach was similar

to her own.

Plaintiff's allegations primarily rest on an argument that the CBA was applied to

her in an improper and discriminatory manner. But she does not show any other cases

where the CBA was applied in a different manner to a similar set of facts. This is fatal to

her showing on the "similarly situated" prong of the *McDonnell Douglas* analysis. *See*

*Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) (Under *McDonnell*

*Douglas*, an employee must be similarly situated "in all material aspects.").

### 2. Legitimate Expectations

The parties also disagree as to whether Plaintiff was meeting legitimate

expectations at the time she was fired. *See Igasaki*, 988 F.3d at 959. Plaintiff argues that

the CBA was applied to her incorrectly. She objects to the first Group III offense on the

basis that Defendants misinterpreted the CBA's terms regarding how on-call

assignments are handled when an employee is on vacation time. (ECF 30 at 8). And she

objects to the second Group III offense on the basis that the dishonesty determination

was inappropriate because she was acting in good faith and any errors were

---

[7] Ms. Putnam's testimony contains some discussion that "it is unclear as to what steps this administration has taken as to the drug free policy" and "this raises concerns for a dispatcher that could possibly be under the influence." (ECF 29-11 at 11). Yet she does not actually state that Peters had any disciplinary issues with drug abuse or related workplace violations. This testimony is not material, and the Court disregards it. *See Schwab v. N. Illinois Med. Ctr.*, 42 F. Supp. 3d 870, 874 (N.D. Ill. 2014) ("With respect to materiality, the court will ignore extraneous matter and take into account only those facts that are relevant.").

Defendants' fault. (ECF 30 at 9). Plaintiff argues that this Court should deny summary judgment because there are "competing explanations grounded in scheduling confusion and administrative control." (ECF 30 at 12).

But the ADEA and Title VII prevent discrimination—not simply bad or unfair choices by employers. Employer's business decisions are given significant deference. *Hefferman v. Bd. of Trs. of Ill. Cmty. Coll. Dist. 508*, 310 F.3d 522, 528 (7th Cir. 2002) ("[T]he law allows an employer substantial scope for the exercise of its business judgment in employment actions. An employer has the right to make business decisions even if its decisions are mistaken or poorly founded as long as it does not make its decision on a prohibited basis").

An employer's reasons for termination can be unfair, arbitrary, unreasonable, or mistaken, without rising to the level of discrimination. *See Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1220 (7th Cir. 1991) (An employer's hiring and firing practices can be "medieval," "high-handed," and "mistaken," so long as they are not discriminatory), *overruled in part on other grounds by Oxman v. WLS-TV,* 12 F.3d 652 (7th Cir. 1993); *Hunt v. Indiana Dep't of Loc. Gov. Fin.*, No. 19-cv-4573, 2022 WL 866170 (S.D. Ind. March 23, 2020) ("An employer can make a mistake or act unfairly when it comes to making personnel choices while still not being discriminatory."); *Ballard v. Illinois Cent. R.R. Co.*, 269 F. Supp. 3d 867, 872 (N.D. Ill. 2017) ("courts 'cannot interfere because an employer's decision is unwise or unfair'" (quoting *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014))). Thus, simply showing that Defendants did not choose the best reading of the CBA, or made their own errors, is not by itself sufficient to raise an inference of

discrimination on the basis of a protected class. Plaintiff raises the possibility that Defendants' decision to terminate her was mistaken, unreasonable, or unfair—but she does not raise the possibility that it was discriminatory. She cites no evidence suggesting that Defendants treated other employees under 40[8] better than her, or any evidence suggesting that Defendants targeted her because of her age. *See Downing v. Abbott Lab'ys*, 48 F.4th 793, 804 (7th Cir. 2022) (to prevail on an employment discrimination claim, a plaintiff "must provide evidence that the decisionmaker acted *because of* her" membership in a protected class (emphasis added)). Nor does Plaintiff show any other evidence suggesting that her age played any role in Defendants' decision-making. Given this, it would be "mere speculation" for a jury to find Defendants liable for discrimination. *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017).

Plaintiff cites a Seventh Circuit case noting that "firing someone for violating a standard operating procedure that does not actually exist, or about which he was not told, could easily be found to be a pretext." (ECF 30 at 8 (quoting *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 811 (7th Cir. 2017))). But *could* is the operative word here. In *McKinney*, there was a wide array of additional evidence indicating discrimination: the plaintiff provided evidence that "he was socially ostracized; supervisors failed to train him adequately; he was fired for conduct that supervisors expressly authorized . . . ; he was treated more harshly than other employees for the

---

[8] The ADEA protects employees 40 years of age and over. 29 U.S.C. § 631.

13

same conduct . . . ; he was penalized for violating standard operating procedures that either did not exist or that he did not in fact violate . . . ; and more." *McKinney*, 866 F.3d at 813. Here, Plaintiff shows no corroborating evidence suggesting that Defendants' motives were discriminatory rather than simply "unwise or unfair." *Widmar*, 772 F.3d at 464.

Thus, she has not shown evidence that, "considered as a whole," would allow a jury to find "an overall likelihood of discrimination." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763–65 (7th Cir. 2016). No "reasonable factfinder could conclude that [plaintiff's] protected characteristic caused an adverse employment action." *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th Cir.) (quoting *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022)). Thus, Plaintiff has not raised any genuine dispute of material fact as to whether her termination was discriminatory, and judgment is proper as a matter of law.[9] *See Anderson*, 477 U.S. at 248 (1986).

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment on all counts. (ECF 19). The Clerk is **DIRECTED** to close the case.

SO ORDERED on May 4, 2026.

　　　　　　　　　　　　　　　　　　 /s/ *Cristal C. Brisco*
　　　　　　　　　　　　　　　　　CRISTAL C. BRISCO, JUDGE
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

---

[9] Plaintiff also argues that whether she met reasonable expectations is irrelevant because "When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner . . . the second and fourth prongs of *McDonnell Douglas* merge—allowing the plaintiff to . . . stave off summary judgment for the time being." (ECF 30 at 3 (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002)). But here, Plaintiff has not produced evidence sufficient to raise an inference that Defendants applied employment expectations in a disparate manner.